UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM J. BARBEAU,

        Plaintiff,

    v.                                                                 Case No. 12-C-0451

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER**

This is an action for review of the final decision of the Commissioner of Social Security denying plaintiff's protective application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Plaintiff William Barbeau challenges the Administrative Law Judges's (ALJ's) decision denying him benefits. Barbeau argues that the ALJ erred in determining that he did not meet or equal the listed impairment for mental retardation under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). For the reasons stated in this opinion, the Commissioner's decision will be reversed and remanded.

**BACKGROUND**

Barbeau was awarded Supplemental Security Income benefits on July 30, 1992. However, the SSA terminated his benefits in 2003 when he was sentenced to prison for a crime. Barbeau reapplied for benefits on February 6, 2009 upon his release from prison. The SSA denied his

application on June 30, 2009. After his application and request for reconsideration were denied, Barbeau requested an administrative hearing. An ALJ held a hearing on November 19, 2010 and issued a written decision finding that Barbeau was not disabled on December 23, 2010. (Tr. 11-18.)

The ALJ performed the five-step sequential evaluation under 20 C.F.R. § 416.920(a) to determine whether Barbeau was disabled. At step one, the ALJ found that Barbeau had not engaged in substantial gainful activity since his application date. (Tr. 13.) At step two, the ALJ found Barbeau had the following severe impairments that resulted in more than a minimal limitation of functioning: obesity, diabetes mellitus, bilateral ankle arthritis, low back pain, and borderline intellectual functioning. (Tr. 13.) At step three, the ALJ determined that Barbeau's impairments did not meet or medically equal any listed impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13.) Specifically, the ALJ considered whether Barbeau's mental impairment met the requirements for mental retardation under Listing 12.05. (Tr. 13.) The ALJ concluded that under Listing 12.05(C), Barbeau did not have both a valid IQ score of 60 through 70 and a severe impairment imposing an additional and significant work-related limitation of function. (Tr. 14.) Likewise, the ALJ concluded that Barbeau did not meet the requirements of 12.05(D) because he did not suffer from marked limitations in activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace; he also had no repeated episodes of decompensation of extended duration. (Tr. 14.)

The ALJ reviewed the medical evidence in the record and concluded that Barbeau was an obese individual, but that the condition was remedial by diet and had not resulted in any "marked mechanical limitations or significant interference with other body systems." (Tr. 16.) The ALJ also found that Barbeau had arthritis in both ankles and low back pain, but the evidence did not support

2

a finding of marked abnormalities upon x-ray examinations, motor abnormality, muscle spasm, neurologic abnormalities, abnormalities of gait, or muscle atrophy. (Tr. 16.) In addition, he found that Barbeau's hypertension and diabetes were controlled with medications and had not resulted in organ damage or other significant loss of functional capacity. The ALJ found that Barbeau's hearing loss was of a mild nature without the use of hearing aids. (Tr. 16.)

Based on these findings, the ALJ found Barbeau was able to perform basic work-related activities subject to some exertional and non-exertional limitations. He found Barbeau was able to lift a maximum of 20 pounds and frequently lift or carry objects weighing up to 10 pounds. (Tr. 16.) He also found that Barbeau could perform activities such as prolonged walking and prolonged standing or sitting most of the time with some pushing and pulling of arm or leg controls. (Tr. 16.) In addition, the ALJ concluded that because Barbeau had borderline intellectual functioning that resulted in a mild restriction of daily activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (each of extended duration), he was limited on a nonexertional basis to performing simple and routine work. (Tr. 16.) Therefore, at step four, the ALJ determined that Barbeau had the residual functional capacity (RFC) to perform simple and routine light work that affords the opportunity to change position. (Tr. 14, 16.)

The ALJ found that Barbeau was unable to perform past relevant work as a laborer because he could not perform the heavy lifting often required. (Tr. 17.) However, the ALJ determined that given Barbeau's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could perform, including industrial assembly, product inspector, machine feeder, hand packager, and food processor. (Tr. 17-18.) Based on these findings, the ALJ

3

concluded that Barbeau was not disabled with the meaning of the Social Security Act. (Tr. 18.) Barbeau filed a request for review by the Appeals Council on January 7, 2011, which was denied on April 25, 2012. This action followed. In the meantime, Barbeau was re-incarcerated for violating his parole in May 2011. As a result, his claim for benefits is limited to the period from February 6, 2009, to May 2011. (ECF No. 9, at 1-2.)

## STANDARD OF REVIEW

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A decision denying benefits need not discuss every piece of evidence, but must provide a "logical bridge" between the evidence and the ALJ's conclusions. *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, also requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). In addition, judicial review is limited

4

to the rationales offered by the ALJ, and the court cannot affirm based on post-hoc justifications. *Shauger v. Astrue*, 675 F.3d 369, 373 (7th Cir. 1999).

**ANALYSIS**

Barbeau raises one primary issue in his request for judicial review: he argues the ALJ improperly concluded that his impairments did not meet the requirements for mental retardation in Listing 12.05(C). If an impairment meets or equals one of the listed impairments, the claimant qualifies for benefits without further inquiry. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). To be disabled under Listing 12.05, the claimant must establish his impairment satisfies the diagnostic description of "mental retardation," defined in the regulations as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 894 (N.D. Ill. 2006). In addition, under section 12.05(C), the claimant must demonstrate both: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maggard*, 167 F.3d at 380. "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration] use[s] the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00(D).

Here, Barbeau's valid IQ scores–tested on the Wechsler Adult Intelligence Scale both in 1978 and again in 2007–satisfy the requirement of Listing 12.05(C). In 1978, Bay Psychiatric Clinic

5

administered a verbal IQ test in which Barbeau registered a verbal IQ of 67. (Tr. 243-45.) In 2007, Oshkosh Correctional Institute administered a full IQ test, finding Barbeau had a verbal intelligence quotient of 68 (placing him in the 2nd percentile compared to others his age), a performance intelligence quotient of 90 (25th percentile), and a full-scale intelligence quotient of 76 (5th percentile). (Tr. 246-48.) In addition, the ALJ found at step two that under 20 C.F.R. § 416.920(c), Barbeau suffered from several severe impairments including obesity, diabetes mellitus, bilateral ankle arthritis, and low back pain. (Tr. 13.) Such a finding requires the impairment or combination of impairments "significantly limits [a claimant's] physical or mental ability to do basic work activities." § 416.920(c). Thus, a finding at step two that a claimant has severe impairments satisfies the requirement of Listing 12.05(C). *See also* 68 Fed. Reg. 74279-01.

Therefore, the ALJ acknowledged both that Barbeau's verbal IQ scores fell within the 60 to 70 range, and that he had physical and mental impairments imposing additional, significant work-related limitations. Yet, without discussion, the ALJ concluded at step three that Barbeau did not meet the requirements in Listing 12.05(C). In addition, the ALJ failed to consider whether Barbeau's impairments satisfied the diagnostic definition of mental retardation as required by Listing 12.05. Thus, the ALJ failed to provide any logical bridge between the evidence and his conclusion at step three. This error necessitates a remand. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.").

The Commissioner argues that the ALJ's decision can nonetheless be upheld because he implicitly concluded that Barbeau did not meet the diagnostic definition of mental retardation when

6

he found that Barbeau had borderline intellectual functioning. In other words, even though Barbeau's impairment met the requirements of paragraph C, he did not satisfy the diagnostic definition of mental retardation. In support, the Commissioner argues that borderline intellectual functioning is a level of functioning above that of mental retardation. (Commissioner's Br. 4-5, ECF No. 15 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 740 (AM. PSYCHIATRIC ASS'N 4th ed., text revision 2000).) The Commissioner also points to the fact that the state agency psychiatrist, taking into account Barbeau's IQ scores, opined that Barbeau had borderline intellectual functioning rather than mental retardation. Additionally, the Commissioner contends that the ALJ relied on the opinion of the state agency doctors in finding Barbeau had only mild restrictions in activities of daily living and social functioning, and therefore, it can be inferred that he did not have significant deficits in adaptive functioning. The Commissioner argues that in combination, this constituted substantial evidence sufficient to support the ALJ's finding that Barbeau did not meet the listing for mental retardation.

But the Commissioner's argument attempts to construct a rationale never set forth by the ALJ, and the Seventh Circuit has repeatedly precluded such arguments under what it calls the *Chenery* doctrine. *See Roddy v. Astrue*, 705 F.3d 631, 637-38 (7th Cir. 2013) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). Moreover, even taking into account the ALJ's entire opinion and inferring a basis for his conclusion that Listing 12.05(C) was not satisfied, as the Commissioner suggests this court do, it is not clear whether there is sufficient evidence to find that Barbeau does not meet the diagnostic definition for mental retardation. It is perhaps possible that he does not, but the point is that the ALJ has provided no reasoned path for reaching such a

7

conclusion. In the absence of any discussion to shed light on why Barbeau did not meet Listing 12.05(C) at step three, the ALJ's decision cannot be affirmed.

## CONCLUSION

Accordingly, based on the foregoing discussion, the decision of the Commissioner is **REMANDED** pursuant to 42 U.S.C. § 405(g) (sentence four) for proceedings consistent with this opinion.

Dated this  14th  day of May, 2013.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court